## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

PAUL BENAVIDEZ,

        Plaintiff,

        v.                                    Civ. No. 20-990 SCY

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

        Defendant.

### MEMORANDUM OPINION AND ORDER[1]

      Plaintiff Paul Benavidez argues that the Commissioner committed error when she denied his claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Plaintiff's Complaint also includes a claim based on the allegedly unconstitutional for-cause removal statute governing the Social Security Commissioner. The Court dismisses the constitutional claim for lack of supporting factual allegations in the Complaint. Further, because Plaintiff has not identified any legal error on the part of the ALJ, the Court affirms the decision below. As a result, the Court GRANTS Defendant's Motion Pursuant To Fed. R. Civ. P. 12(b)(1) To Dismiss Plaintiff's Complaint In Part. Doc. 17. The Court DENIES Plaintiff's Motion To Remand Agency Decision, Doc. 23, and affirms the decision below.[2]

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 5, 10, 11. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).

[2] The Court reserves discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

## APPLICABLE LAW

A.     Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1)     At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2)     At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3)     At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)     If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [he] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [he] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)     If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.     Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the

evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

**I.    The Court Grants the Commissioner's Motion to Partially Dismiss the Complaint.**

Plaintiff filed his Complaint on September 29, 2020. Doc. 1. In the Complaint, he

challenges the denial of his application for social security benefits. *Id.* at 2 ¶ 7. The Complaint

further alleges that "Neither the Commissioner nor the Administrative law Judge were

constitutionally appointed as provided in *Seila LLC v Consumer Financial Protection Bureau,*

591 U.S. __ (2020)." *Id.* at 3 ¶ 8. The Complaint contains no other allegations pertinent to this

claim. Defendant filed a Motion to Dismiss this allegation, arguing that Plaintiff lacks standing

to bring this claim. Doc. 17. Plaintiff did not file a response to the motion.

Thereafter, Defendant filed a notice of supplemental authority, citing the recent Supreme

Court case of *Collins v. Yellen*, 141 S. Ct. 1761 (2021). Doc. 27. Plaintiff filed no response to

this notice. Defendant then filed a motion for leave to file a supplemental brief, refining her

substantive arguments in the wake of *Collins*. Doc. 30. Plaintiff did not oppose this request and

the Court granted it. Doc. 33. Defendant filed its supplemental brief on December 1, 2021. Doc.

34. The Court gave Plaintiff 14 days to respond, Doc. 33, but Plaintiff did not file a response.

In *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), the

Supreme Court found that the statute governing the Consumer Financial Protection Bureau

("CFPB") violated separation-of-powers principles because it prevented the President from

removing the CFPB Director at will. In citing *Seila* and asserting "[n]either the Commissioner

nor the Administrative law Judge were constitutionally appointed," Defendant assumes Plaintiff

means to challenge a similar for-cause removal provision in the Social Security Act. 42 U.S.C.

§ 902(a)(3) ("An individual serving in the office of Commissioner may be removed from office

only pursuant to a finding by the President of neglect of duty or malfeasance in office."); *see*

Doc. 17 at 1. Plaintiff's citation to *Seila* and his brief assertion of unconstitutional appointments

leaves the precise nature of his challenge unclear. However, he neither asserts Defendant's

assumption is incorrect nor provides any other theory of relief. Therefore, the Court will also

assume Plaintiff means to challenge the for-cause removal provision in the Social Security Act.

Defendant originally argued that Plaintiff lacks standing because his claimed injury is not

traceable to Defendant's actions and so is not redressable. Doc. 17. However, in *Collins v. Yellin*,

the Supreme Court held that the plaintiffs had standing to challenge a similar provision

restricting the removal of the director of the Federal Housing Finance Agency ("FHFA"). 141 S.

Ct. at 1778-79. In light of that holding, Defendant has withdrawn its standing argument. Doc. 34

at 2. Nonetheless, Defendant argues that even if a constitutional violation is found, Plaintiff has

shown no harm and so is not entitled to relief. *Id.* The Court agrees.

*Collins* required the plaintiffs to demonstrate an entitlement to retrospective relief—that

is, the undoing of the decision made by a body who allegedly lacked constitutional authority. 141

S. Ct. at 1788-89. In doing so, the Court distinguished an unconstitutional *removal* provision

from an unconstitutional *appointment* provision:

> All the officers who headed the [agency] during the time in question were
> properly appointed. Although the statute unconstitutionally limited the President's
> authority to remove the confirmed Directors, there was no constitutional defect in
> the statutorily prescribed method of appointment to that office. As a result, there
> is no reason to regard any of the actions taken by the [agency] in relation to the
> [challenged action] as void.

*Id.* at 1787. An unconstitutional removal provision does not automatically translate into an

"exercise of power that the actor did not lawfully possess" or a "basis for concluding that any

head of the [agency] lacked the authority to carry out the functions of the office." *Id.* at 1788.

Nonetheless, the Supreme Court left open the possibility that the plaintiffs could

potentially demonstrate harm flowing from the removal provision:

> That does not necessarily mean, however, that the shareholders have no
> entitlement to retrospective relief. Although an unconstitutional provision is never

really part of the body of governing law (because the Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment), it is still possible for an unconstitutional provision to inflict compensable harm. And the possibility that the unconstitutional restriction on the President's power to remove a Director of the [agency] could have such an effect cannot be ruled out. Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Id.* at 1788-89. The Supreme Court remanded the case for the lower courts to resolve in the first instance the question of whether the provision had inflicted any such harm on the plaintiffs. *Id.* at 1789.

Applying the reasoning in *Collins*, the Court finds that to survive a motion to dismiss, a plaintiff must allege facts showing plausible harm caused by the removal provision. There are no such allegations in this Complaint. The Court will not make arguments for Plaintiff. Therefore, the Court grants Defendant's motion to partially dismiss, and dismisses Plaintiff's constitutional challenge based on *Seila Law LLC*.

**II.      The Court Affirms the Denial of Social Security Benefits.**

      A.      <u>The ALJ Did Not Err by Relying on the VE Testimony at Step Five.</u>

At step 5, the burden shifts to the Commissioner to prove that the claimant can perform other work existing in significant numbers in the national economy. *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). Plaintiff argues that the Commissioner did not meet this burden because the ALJ failed to resolve a conflict between the testimony of the vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT"). Doc. 21 at 2-4.

The Tenth Circuit has held that "an ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may

rely on the expert testimony as substantial evidence to support a determination of nondisability."
*Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). After the Tenth Circuit's holding in
*Haddock*, the Social Security Administration promulgated Social Security Ruling ("SSR") 00-4p
and confirmed the ALJ's affirmative responsibility to ask about such conflicts.

Plaintiff argues that the VE's testimony here was in conflict with the DOT in two ways:
the DOT number and job title. Doc. 24 at 3. According to the transcript of the hearing, the VE
testified that a job available to the claimant was that of "dishwasher," "DOT number 3**81**.687-
010," with 282,00 jobs. AR 90 (emphasis added). This DOT number is not correct; "dishwasher"
corresponds to 3**18**.687-010 (transposing the second and third digits). *See* Dictionary of
Occupational Titles, 318.687-010 Kitchen Helper, 1991 WL 672755.

Defendant's counsel states that he reviewed the audio transcript of the hearing and that
the VE recited the correct job number during the hearing. Doc. 29 at 5. In addition, the ALJ gave
the correct job number in his written decision, and thus likely heard the correct number at the
hearing. AR 28. But even if it were an error on the part of the VE and not the transcription, the
Court would affirm. The DOT job number 381.687-010 corresponds to "central-supply worker,
which deals with washing surgical instruments rather than dishes. *See* Dictionary of
Occupational Titles, 381.687-010, Central-Supply Worker, 1991 WL 673256. In context, this
testimony would not have made any sense and would have been a simple misstatement on the
part of the VE. *See Block v. Astrue*, 506 F. App'x 764, 771-72 (10th Cir. 2012) (overlooking a
"transcription error" where the ALJ, the VE, and the court were all clearly on the same page due
to the context of the testimony). In sum, the Court finds the VE testified consistently with the
DOT in this respect and the VE testimony is substantial evidence supporting the ALJ's decision.

Next, Plaintiff argues that the description of "kitchen helper" in the DOT is in conflict with the VE's description of the job. Plaintiff points out that "kitchen helper" in the DOT is broader than merely "dishwasher," and that the VE did not testify the Plaintiff could perform all the duties of a "kitchen helper." Doc. 24 at 4. The DOT describes the duties of kitchen helper as follows:

> Performs any combination of following duties to maintain kitchen work areas and restaurant equipment and utensils in clean and orderly condition: Sweeps and mops floors. Washes worktables, walls, refrigerators, and meat blocks. Segregates and removes trash and garbage and places it in designated containers. Steam-cleans or hoses-out garbage cans. Sorts bottles, and breaks disposable ones in bottle-crushing machine. Washes pots, pans, and trays by hand. Scrapes food from dirty dishes and washes them by hand or places them in racks or on conveyor to dishwashing machine. Polishes silver, using burnishing-machine tumbler, chemical dip, buffing wheel, and hand cloth. Holds inverted glasses over revolving brushes to clean inside surfaces. Transfers supplies and equipment between storage and work areas by hand or by use of handtruck. Sets up banquet tables. Washes and peels vegetables, using knife or peeling machine. Loads or unloads trucks picking up or delivering supplies and food.

1991 WL 672755.

The Court disagrees that there is any conflict. The DOT states that a "kitchen helper" may perform "*any* combination" of the listed duties (emphasis added). The listed duties indisputably include dishwashing ("Washes pots, pans, and trays by hand. Scrapes food from dirty dishes and washes them by hand or places them in racks or on conveyor to dishwashing machine."). The DOT does not contemplate that *every* job that falls under "kitchen helper" includes *every* listed duty. The VE's testimony clarified the DOT, rather than contradicted it. There is no *Hackett* error.

In addition, the Court notes that Plaintiff cites no authority requiring the VE to recite the *exact* job titles when testifying in accordance with the DOT. Rather, the Tenth Circuit has affirmed where the VE testimony and the DOT job titles differ in some regard. *See, e.g.*, *Stokes v. Astrue*, 274 F. App'x 675, 684 n.5 (10th Cir. 2008) ("[T]he official titles for the jobs the VE

described 'electrical assembler,' 'clerical mailer,' 'bench assembler,' and 'semiconductor assembler' are actually 'assembler, electrical accessories I,' 'addressor,' 'fabricator, foam rubber,' and 'wafer breaker, semiconductors,' respectively."). Like in *Stokes*, here the VE provided the ALJ and the Court with the DOT numbers for the jobs she was testifying about. As long as the VE testimony enables the Court to meaningfully review the ALJ's decision—which it does in this case—a slight difference in the description of job titles is not a basis to remand.

Next, Plaintiff asserts that the VE's testimony as to job numbers lacks substantial evidence. Doc. 24 at 5-7. Plaintiff states that the DOT contains no statistics regarding the number of jobs, and therefore experts must rely on some other source for their testimony. *Id.* at 5; *see also Anders v. Berryhill*, 688 F. App'x 514, 522 (10th Cir. 2017) (discussing other sources for job numbers in the economy). Plaintiff argues that the VE must "accurately match job titles from the DOT to an alternative publication with reliable job numbers to carry the Commissioner's step five burden of proof." Doc. 24 at 5. Plaintiff relies on *Goode v. Commissioner of Social Security*, 966 F.3d 1277 (11th Cir. 2020), in which the Eleventh Circuit reversed the decision below because the VE incorrectly matched the DOT code with the job data from another publication.

The problem with applying *Goode* to this case is that there is no information regarding how the VE reached the job numbers she testified about. The VE did not state what publication the numbers came from. AR 90. Neither Plaintiff's counsel nor the ALJ asked the VA about her methodology. *Id.* There is no conceivable way to apply the *Goode* analysis to the record in this case. And *Goode* does not hold that a VE is required to use the methodology in question in that case in order for her testimony to constitute substantial evidence. The takeaway from *Goode* (if courts in the Tenth Circuit were to follow it) is that when the record is clear that a VE made a material error in applying the methodology she chose and described, remand is appropriate.

But nothing requires a VE to use the method at issue in *Goode*. There are a variety of permissible methods for the VE to arrive at job numbers:

> Evidence from VEs . . . can include information not listed in the DOT. The DOT contains information about most, but not all, occupations. The DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces. The term "occupation," as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs. Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's . . . experience in job placement or career counseling.

SSR 00-4p, 2000 WL 1898704, at *2.

Plaintiff cites no authority, and the Court has found none, that either the VE or the ALJ has a sua sponte duty to discuss job number methodology in the absence of questioning from the claimant. Such a rule seems to conflict with the Supreme Court's holding in *Biestek v. Berryhill*, that "[a]ssuming no demand [by counsel for the underlying data], a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data." 139 S. Ct. 1148, 1155 (2019). The VE's testimony can otherwise be judged according to her credentials, her experience, and her cogency or persuasiveness at the hearing. *Id*. Plaintiff does not challenge whether the VE's testimony in this case met the "substantial evidence" bar, except to claim that—even in the absence of a demand—the VE needed to explain how she reached the job numbers. The Court rejects that proposition.

Finally, Plaintiff argues that the ALJ should have done a *Trimiar* analysis before relying on job numbers. Doc. 24 at 10-11. This argument depends on the premise that the "dishwasher" job is not appropriate, and only the "industrial cleaner" job (with 12,000 jobs in the national economy) can be reviewed by the Court. *Id.* at 10. Because there was no error with the dishwasher job, the Court rejects this argument.

The Court likewise rejects any argument that the ALJ was required to do a *Trimiar* analysis with respect to the total number of jobs (294,000 jobs). *See Trimiar v.  Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992) (specifying several factors to consider when determining whether regional jobs were "isolated"). But here, the ALJ found national numbers, not regional numbers. Further, the VE is not required to testify as to, and the ALJ is not required to find, the number of available regional jobs. *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (concluding that "the proper focus generally must be on jobs existing in the national, not regional, economy"). "*Trimiar* does *not* hold that only regional jobs are relevant or that a court must engage in a [multi-factor] analysis when the number of jobs relevant available is . . . much larger" than 650 to 900 jobs. *Id.* at 1274 n.2; *see also Botello v. Astrue*, 376 F. App'x 847, 851 (10th Cir. 2010) (no *Trimiar* analysis is required when the VE testified there were 67,250 jobs available in the national economy).

In short, Plaintiff identifies no step-five error in this case.

B.      The RFC Is Not Contradictory

The ALJ assigned an RFC that stated both that Plaintiff can "respond appropriately to supervision, coworkers, and work situations," and that Plaintiff is "is limited to superficial, work-related interactions with coworkers, supervisors, and the general public." AR 20. Plaintiff argues that "[t]he ALJ did not further define 'appropriate coworker interaction' or 'Superficial' interaction with coworkers either in general or in the context of the jobs allegedly available. Nor did the ALJ ensure that the VE's understanding of the two terms were the same as his." Doc. 24 at 7.

Plaintiff does not cite any authority in support of an argument that the ALJ must define such terms in the RFC. If the Court can apply common sense and the plain meaning of ordinary English words, the Court will do so. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir.

2012) (the court "should, indeed must, exercise common sense."). It appears clear that the RFC permits "superficial" interaction with others and clarifies that Plaintiff is capable of responding "appropriately" to that level of interaction required by the job. In fact, this is exactly what the ALJ said: "The Claimant is limited to superficial, work-related interactions with coworkers, supervisors, and the general public, but within those restrictions is able to respond appropriately to supervision, coworkers, and work situations." AR 26.

Plaintiff further asserts, based on Plaintiff's own interpretation of what a "kitchen helper" might be required to do, that the ALJ did not, in practice, assign jobs calling for "superficial" interactions with others. Doc. 24 at 9. This is not correct. The ALJ assigned "Industrial cleaner," DOT # 381.687-018; and "Dishwasher," DOT # 318.687-010. Both jobs have a "people" code of 8, which means interaction with people is "not significant" according to the DOT. Thus, the VE testimony, the DOT, and the ALJ's RFC are all consistent. The decision below is affirmed.

## CONCLUSION

For the reasons stated above, Defendant's Motion Pursuant To Fed. R. Civ. P. 12(b)(1) To Dismiss Plaintiff's Complaint In Part, Doc. 17, is **GRANTED** and Plaintiff's Motion To Remand Agency Decision, Doc. 23, is **DENIED**.

**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**